UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NEW YORK YANKEES PARTNERSHIP
and LEGENDS HOSPITALITY, LLC

                            Petitioners,

              -against-

WILLIAM MILLER,

                            Respondent.

**ORDER**

20 Civ. 5953 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

New York Yankees Partnership and Legends Hospitality, LLC (collectively, "Petitioners") have filed a petition (the "Petition"), pursuant to Section 9 of the Federal Arbitration Act, 9 U.S.C. § 9, to confirm an arbitration award that they obtained against Respondent William Miller.  Although the Petition was served on Miller (Dkt. No. 11), he has not opposed the Petition or otherwise appeared in this action.  For the reasons stated below, the arbitration award will be confirmed.

**BACKGROUND**

Petitioners New York Yankees Partnership and Legends Hospitality, LLC are private entities operating in New York.  (Pet. 56.1 Stmt. (Dkt. No. 17) ¶¶ 1-2)  Petitioners and Respondent William Miller entered into the Legends Suite License Agreement, the Legends Suite Ticket Agreement, and the Legends Suite Food and Beverage Agreement, and addenda to each of these agreements, in 2017 (the "Agreements").  The Agreements concern Yankees season tickets, food benefits, and services for six seating locations in Yankee Stadium.  (Pet. (Dkt. No. 1) ¶ 8)  The Agreements have a ten-year term ending on December 31, 2027.  (Id.)

Under the terms of the Agreements, a licensee is in default when the licensee "fails to pay in full, as and when due, the Annual Ticket Fees, the costs associated with goods and/or services purchased and/or licensed through the use of the Concierge Service or any other fee, charge or amount to be paid by Licensee or any Invitee hereunder, including any Taxes." (Agreements (Dkt. No. 7) at 10)  When a default occurs, a Licensor may, inter alia,

> continue to hold Licensee responsible for:  (1) Licensee's obligations under the Agreement and the License Agreement; and (2) all amounts that would have been due during the remainder of the Term, including any remaining portions of the Annual Ticket Fee(s) and Annual License Fee(s); and (B) cause the Concessionaire to continue to hold Licensee responsible for:  (1) Licensee's obligations under the Food and Beverage Agreement; and (2) all amounts that would have been due during the remainder of the Term, including all remaining portions of the Annual Food and Beverage Fee(s).

(Id. at 11)

The Agreements further provide that,

> [i]n the event of any material dispute, controversy or claim of whatever nature arising out of, in connection with, or in relation to the interpretation, performance or breach of this Agreement or the respective rights and obligations of the parties, including any claim based on contract, tort, equity or statute (each a "Dispute"), and as a condition precedent to any mediation or arbitration being commenced by either party, a representative of each of the parties will attempt in good faith to resolve the Dispute.

(Id. at 13)  "[T]he parties agree that any Dispute that is not settled through negotiations between the parties and/or non-binding mediation shall be submitted to binding arbitration. . . ."  (Id. at 14)

Within three business days following the conclusion of an arbitration hearing, "each of the parties will submit to the Arbitrators and the other party a statement setting forth its good faith proposal as to the resolution of the Dispute ('Dispute Resolution Proposal')."  (Id.)

> The Arbitrators will, within ten (10) business days after the conclusion of the [submission of Dispute Resolution Proposals], render a written opinion (the "Arbitrator Opinion") establishing the resolution of the Dispute as being either the Dispute Resolution Proposal of Licensor or Licensee.  The Arbitrators will have no power or authority to impose any resolution not specified in the Dispute Resolution Proposals.  The resolution of the

2

Dispute pursuant to this Section . . . will be final and binding on the parties. Neither of the parties may apply to any court to vacate, modify or appeal the resolution of the Dispute . . . , but may apply to an appropriate court solely for the purpose, if necessary, of enforcing the recognition of the resolution of the Dispute. . . .

(Id.)

The Agreements further provide that, "[u]pon any Event of Default, Licensor shall be entitled to recover all reasonable attorneys' and professionals' fees, expenses and litigation costs (including arbitration fees and costs) incurred in connection with such Event of Default." (Id.)

In connection with the 2019 season, Respondent did not pay license fees, ticket fees, and food and beverage fees totaling $ 378,108.00.[1]  (Pet. (Dkt. No. 1) ¶ 10)  On November 22, 2019, Petitioners filed a request for arbitration, seeking payments Respondent owed under the Agreements, along with costs, interest and attorney's fees.  (Id. ¶ 11)

In or about May 2020, Arbitrator Jay G. Safer conducted an arbitration hearing, received submissions from Petitioners, and heard oral argument, including from Respondent.  (Pet. 56.1 Stmt. (Dkt. No. 17) ¶ 6)

On May 26, 2020, the parties entered into a settlement agreement in which they agreed that the arbitration was resolved in favor of Petitioners and against Respondent. Respondent agreed to pay all fees due for the 2019 and 2020 seasons along with certain other fees and expenses.  (Id. ¶ 7)  On consent, Arbitrator Safer entered an award that same day.  (Id. ¶ 8)

On July 29, 2020, Arbitrator Safer – with the consent of the parties and in light of the COVID-19 pandemic – modified the previous award such that all payments for the 2020

---

[1]  The Agreements provide for escalating payments each year.  For 2019, Respondent was obligated to pay $96,495.30 in ticket fees, $231,080.85 in license fees, and $50,787.00 in food and beverage fees.  (Agreements (Dkt. No. 7) at 52, 54, 56)

season were removed.  (Id. ¶ 9)  A new award was entered in favor of Petitioners, which amounts
to $392,279.25 (the "Award").  (Id.)  The Award addresses payments due for the 2019 season
and certain other fees and expenses.  (Id.; Pet., Ex. A (Dkt. No. 1-1))

On July 31, 2020, Petitioners filed the Petition (Dkt. No. 1), and on December 16,
2020, Petitioners moved for summary judgment.  (Dkt. No. 15)  Respondent has not paid the
Award, has not appeared in this action, has not responded in any fashion to the Petition, and has
not filed any opposition to Petitioners' motion for summary judgment.

## DISCUSSION

## I.   APPLICABLE LAW

"Following issuance of an arbitration award, § 9 of the Federal Arbitration Act
('FAA') provides that a party may apply to a district court 'for an order confirming the award,
and thereupon the court must grant such an order unless the award is vacated, modified, or
corrected as prescribed in [S]ections 10 and 11 of this title.'"  STMicroelectronics, N.V. v. Credit
Suisse Sec. (USA) LLC, 648 F.3d 68, 74 (2d Cir. 2011) (quoting 9 U.S.C. § 9).  "Arbitration
awards are subject to very limited review in order to avoid undermining the twin goals of
arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."
Folkways Music Publishers, Inc. v. Weiss, 989 F.2d 108, 111 (2d Cir. 1993).

The Second Circuit has explained that,

> [n]ormally, confirmation of an arbitration award is "a summary proceeding that merely
> makes what is already a final arbitration award a judgment of the court," Florasynth, Inc.
> v. Pickholz, 750 F.2d 171, 176 (2d Cir. 1984), and the court "must grant" the award
> "unless the award is vacated, modified, or corrected." 9 U.S.C. § 9. The arbitrator's
> rationale for an award need not be explained, and the award should be confirmed "'if a
> ground for the arbitrator's decision can be inferred from the facts of the case,'" Barbier v.
> Shearson Lehman Hutton, Inc., 948 F.2d 117, 121 (2d Cir. 1991) (quoting Sobel v. Hertz,
> Warner & Co., 469 F.2d 1211, 1216 (2d Cir. 1972)).  Only "a barely colorable
> justification for the outcome reached" by the arbitrators is necessary to confirm the

award.  Landy Michaels Realty Corp. v. Local 32B-32J, Service Employees Int'l Union, 954 F.2d 794, 797 (2d Cir.1992).

D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006).

Because a petition to confirm an arbitration award should be "treated as akin to a motion for summary judgment based on the movant's submissions," where the non-movant has failed to respond to a petition to confirm, the court "may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial."  Id. at 109-110 (citation omitted).  Even unopposed petitions to confirm arbitration awards must "'fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law.'"  Id. at 110 (quoting Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (quoting Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996) (internal quotation marks omitted))).

## II.    ANALYSIS

Here, Petitioners have demonstrated that there are no genuine issues of material fact that preclude summary judgment.  As explained above, the Award was issued on consent. (See Pet., Ex. A (Dkt. No. 1-1))  Moreover, the arbitrator "duly heard the proofs and allegations of the Parties," and concluded that they had "agreed and consented" to resolve the arbitration in favor of Petitioners, and that "[t]he total sum for this Award shall be $ 392,279.25," which includes "fees owed . . . for the 2019 License Year," along with "attorneys' fees" and "arbitration costs and fees."  (Id. at 2-3)

The Award was also within the powers granted to the arbitrator under the Agreements, which state that "any Dispute that is not settled through negotiations . . . shall be submitted to binding arbitration."  (Agreements (Dkt. No. 7) at 14)  The Award is likewise consistent with the Agreements, which state that Petitioners "may recover all unpaid amounts

due" as well as "reasonable attorneys' and professionals' fees, expenses and litigation costs

(including arbitration fees and costs) incurred in connection with [a default by Respondent]."

(Id. at 11)

"Courts are not authorized to review [an] arbitrator's decision on the merits [even

in the face of] allegations . . . that the decision rests on factual errors or misinterprets the parties'

agreements." N.Y.C. Dist. Council of Carpenters Pension Fund v. Star Intercom & Constr., Inc.,

No. 11. Civ. 3015 (RJH), 2011 WL 5103349, at *4 (S.D.N.Y. Oct. 27, 2011) (quoting Major

League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001) (internal quotation marks

omitted)).  Here, of course, Respondent has not alleged that the Award is premised on factual

errors or misinterpretations of the underlying Agreements.

A court "may vacate an arbitration award in four specific situations":

> "(1) where the award was procured by corruption, fraud, or undue means; (2)
> where there was evident partiality or corruption in the arbitrators . . .; (3) where
> the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon
> sufficient cause shown, or in refusing to hear evidence pertinent and material to
> the controversy; or of any other misbehavior by which the rights of any party have
> been prejudiced; or (4) where the arbitrators exceeded their powers, or so
> imperfectly executed them that a mutual, final, and definite award upon the
> subject matter submitted was not made."

In re Arbitration Between General Sec. Nat. Ins. Co. and AequiCap Program Adm'rs, 785 F.

Supp. 2d 411, 417 (S.D.N.Y. Apr. 29, 2011) (quoting 9 U.S.C. § 10(a)).  Here, there is no

evidence that the Award was made unlawfully, arbitrarily, or in excess of the arbitrator's powers.

Accordingly, the petition to confirm the Award will be granted.

## CONCLUSION

For the reasons stated above, the Petition to confirm the arbitration award is

granted.  The Clerk of Court is directed to enter judgment, confirming the arbitration award in

the amount of $392,279.25.  The Clerk of Court is further directed to terminate the motion (Dkt.

No. 15) and to close this case.

Dated:  New York, New York
        August 9, 2021

SO ORDERED.

_Paul G. Gardephe_

Paul G. Gardephe
United States District Judge